UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| YUNIOR SOSA ORDONEZ, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:26-CV-067-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| FIELD OFFICE DIRECTOR, *ICE* | ) | **ORDER** |
| *Enforcement and Removal Operations,* | ) | |
| *Louisville, Kentucky Field Office, U.S.* | ) | |
| *Immigration and Customs Enforcement,* | ) | |
| *Department of Homeland Security, in his* | ) | |
| *official capacity (and any successor in* | ) | |
| *office), et al.,* | ) | |
| | ) | |
| Respondents. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Petitioner Yunior Sosa Ordonez's Petition for Writ of Habeas Corpus, [R. 1], and Emergency Motion for Temporary Restraining Order and Immediate Release from Custody, [R. 3]. Therein, Mr. Ordonez (hereinafter, "Petitioner") alleges that Respondents—which include the unnamed Field Office Director of Enforcement and Removal Operations at the Louisville Field Office of Immigration and Customs Enforcement (hereinafter, "ICE"); Department of Homeland Security (hereinafter, "DHS") Secretary Kristi Noem; DHS; Pamela Bondi, United States Attorney General; the Director of ICE, and the Warden of Oldham County Detention Center—have detained him in violation of the Fifth Amendment's Due Process Clause and constitutional principles of comity and federalism. [R. 1, pp. 10, 12, 13–14, 15; R. 3, p. 3]. The Court issued an Order to Show Cause, [R. 4], setting an evidentiary hearing date and establishing a briefing schedule for the parties. Thereafter, the parties submitted a Joint Motion, [R. 8], to forego the evidentiary hearing, which the Court granted. [R. 9]. Both parties also

- 1 -

submitted further briefs, with Respondents filing a Response to the Court's Order to Show Cause, [R. 5], and Petitioner filing a reply, [R. 7].[1] The matter is therefore ripe for review. For the following reasons, the court will deny Petitioner's Petition for Writ of Habeas Corpus, [R. 1], and Emergency Motion for Temporary Restraining Order and Immediate Release from Custody, [R. 3].

## I.    BACKGROUND

Petitioner Yunior Sosa Ordonez is a native and citizen of Cuba who entered the United States on October 19, 2021, and has resided in Louisville, Kentucky since then. [R. 1, p. 6; R. 12-1, p. 1; R. 5-3, p. 4]. When Petitioner first entered the United States, he encountered a Border Patrol Agent who determined that Petitioner had unlawfully entered the United States. [R. 5-3, p. 2]. He was then arrested but, after being served with a Notice to Appear pursuant to the Immigration and Nationality Act ("INA"), was ultimately released on his own recognizance pending further removal proceedings. [R. 12-1; R. 5-3, pp. 2, 4]. Since then, Petitioner has submitted multiple pending applications for lawful status, including applications for asylum, for a U-Nonimmigrant visa, and for a Green Card under 8 U.S.C. § 1255. [R. 1, p. 13].

On June 9, 2025, Petitioner was cited for "no/expired plates and failure of non-owner operator to maintain required insurance." [R. 5-3, p. 4]. Petitioner pled guilty to the latter charge on July 9, 2025, and was ordered to pay a fine. *Id.* Then, on October 10, 2025, Petitioner was arrested after he failed to appear in court regarding the violation. *Id.*; [R. 1, pp. 8, 13]. Petitioner was taken into ICE custody later that day and has been confined since then, including at Oldham County Detention Center where he is currently confined. [R. 1, p. 8].

---

[1] Petitioner also filed a Motion to Expedite Decision on Petition for Writ of Habeas Corpus, [R. 13], in which he urged the Court to "issue a ruling as soon as possible." *Id.* at 3.

Notably, before his detention and confinement, Petitioner worked as a Lyft driver in Jefferson County, Kentucky. *Id.* at 7. During that employment, Petitioner was the victim of an armed carjacking in which a passenger produced a handgun, forced Petitioner to stop and exit his vehicle, and fired the gun at Petitioner before fleeing in Petitioner's vehicle. *Id.* The perpetrator has since been apprehended and charged with various felonies related to the incident, and the case is pending before the Jefferson County Circuit Court. *Id.* Based on Petitioner's cooperation in that investigation and status as a victim of a violent offense, Petitioner has a pending application for a U-Nonimmigrant visa, for which the authorized official at the Louisville Metro Police Department completed a Form I-918, Supplement B, on Petitioner's behalf. [R. 1, p. 13; R. 1-4, pp. 2–13]. That form confirms that Petitioner is a victim of a serious violent felony who has been cooperating with investigators and is likely to remain helpful in the investigation and prosecution of the crime, among other things. [R.1-4, pp. 4–8].

After Petitioner was detained, his counsel sought his parole or release based on his status as the victim and sole witness to this crime, the public-safety interest in the state prosecution of the offender, and Petitioner's lack of criminal history besides minor traffic infractions. [R. 1, p. 9; R. 1-2]. Counsel emailed ICE's Chicago Outreach email address, Chicago.Outreach@ice.dhs.gov, and ICE agent Jason Johnson responded, declined to release Petitioner on parole, and directed Petitioner's counsel to seek relief before an Immigration Judge ("IJ"). [R. 1, p. 6; R. 1-3, p. 3].[2]

Meanwhile, Petitioner's counsel also filed a motion for bond before an IJ. [R. 1-3, p. 3]. On January 14, 2026, Petitioner received a bond redetermination hearing[3] before IJ Kelly Johnson,

---

[2] It is not clear precisely who Jason Johnson is or what position he holds with ICE. *See generally* [R. 1-3]. Regardless, nowhere do Mr. Johnson's communications suggest that he purported to communicate ICE's official policies or speak on behalf of ICE as an agency, rather than simply in response to the inquiry made by Petitioner's counsel. *See id.*

[3] The hearing before the IJ is a redetermination hearing because the initial custody and bond determination is made by a DHS official, typically the district director. *See* 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by

who denied Petitioner's request for release on bond under 8 C.F.R. § 1236. [R. 5-2, p. 1]. The IJ based his ruling on two grounds, alternatively finding (1) he lacked authority to grant bond under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), and (2) even if he did have authority to grant Petitioner's bond, Petitioner was a danger to the community and a flight risk. *Id.* Petitioner's merits hearing before IJ Johnson, in which his removal will be discussed, is scheduled for April 7, 2026.

After IJ Johnson denied Petitioner's request for bond, Petitioner filed the instant Petition for Writ of Habeas Corpus, [R. 1], and Emergency Motion for Temporary Restraining Order and Immediate Release from Custody, [R. 3], on January 29, 2026. In his Petition and Motion, Petitioner argues he is being wrongfully detained at Oldham County Detention Center and is entitled to immediate release from custody based on numerous grounds. *See* [R. 1; R. 3]. First, Petitioner contends his continued detention violates the Fifth Amendment because it does not serve a legitimate purpose, contending that he is not a danger to the community or a flight risk as well as pointing to the need for his testimony in state criminal proceedings and the "prolonged" nature of his detention. [R. 1, pp. 10, 13–14]. Relatedly, Petitioner claims ICE's refusal to grant parole was "arbitrary, capricious, and unconstitutional." *Id.* at 14–15. Petitioner further argues his detention "interferes with Kentucky's sovereign authority to enforce its criminal laws." *Id.* at 15. Lastly, Petitioner asserts his detention "frustrates the statutory purpose of the U-visa program," under which Petitioner currently seeks a visa. *Id.* at 16. Based on these arguments, Petitioner contends he has a strong likelihood to succeed on the merits, his continued detention subjects him to irreparable harm, his release would not harm others, and his release would serve the public interest, thus entitling him to a temporary restraining order. *Id.* at 16–17; [R. 3, pp. 3–5]. Petitioner seeks his immediate release from ICE custody and an injunction from this Court preventing

the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released.").

Respondents from removing Petitioner until the completion of the proceedings before the Jefferson County Circuit Court. [R. 1, pp. 17–18; R. 3, p. 5].

Respondents filed a Response at [R. 5] to Petitioner's Petition and Motion, and Petitioner replied at [R. 7]. This matter is therefore ripe for review.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Thus, federal courts may "issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.* (citations omitted).

The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).[4]

---

[4] Petitioner has also filed an Emergency Motion for Temporary Restraining Order and Immediate Release from Custody with the Court. [R. 3]. In determining whether to grant a temporary restraining order, the Court considers "(1) the movant's likelihood of success on the merits; (2) whether the movant 'would likely be permanently harmed absent the injunction; (3) whether the injunction would cause substantial harm to third parties; and (4) whether the injunction would serve the public interest.'" *Dinter v. Miremami*, 627 F. Supp. 3d 726, 730 (E.D. Ky. 2022) (quoting *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018)). For the reasons that follow, the Court finds Petitioner has no likelihood of success on the merits, and his motion therefore fails.

### III.    ANALYSIS

#### A.  Bond Determination: Section 1225 and Section 1226

Under 28 U.S.C. § 2241, federal courts have jurisdiction to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)).

As this Court has previously outlined, Congress has distinguished between two classes of aliens, providing a bond hearing for those detained under 8 U.S.C. § 1226(a) but imposing mandatory detention without bond for those detained under § 1225(b)(2). *See Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 807 F.Supp.3d 725, 735 (W.D. Ky. Oct. 27, 2025) (discussing each provision). For the reasons set forth in this decision, the Court finds that Petitioner has received the process he is due regardless of the statutory authority for his detention—in other words, regardless of whether his detention is pursuant to § 1225 or § 1226. This is because to the extent Petitioner is entitled to a bond hearing under § 1226, the parties agree he has already received it. *See* [R. 1, p. 9; R. 5, p. 2; R. 5-2, pp. 1–2].

Nevertheless, Petitioner now contends that his detention "no longer serves any legitimate civil or regulatory purpose." [R. 1, p. 13]. But, in support, he argues only that he is not a flight risk or a danger to his community, his testimony is needed in state criminal proceedings, and his detention is "prolonged or arbitrary." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)). Respondents answer that the IJ already established Petitioner *is* a danger to the community and a flight risk, and the Court lacks jurisdiction to review those decisions. The Court agrees.

Jurisdiction poses a threshold question. See *Florida v. Thomas*, 532 U.S. 774, 777 (2001) ("[W]e must first consider whether we have jurisdiction to decide this case."). And "'[f]ederal courts,' it bears repeating, 'are courts of limited jurisdiction.'" *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Accordingly, "[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Therefore, as an initial matter, this Court must determine whether it has jurisdiction to consider Petitioner's claims.

In his Reply, Petitioner agrees that § 1226(e) divests this Court of jurisdiction over "discretionary custody determinations in the ordinary course of removal proceedings." [R. 7, p. 4]. Although Petitioner correctly argues that he may challenge pre-removal immigration detention in certain circumstances pursuant to 28 U.S.C. § 2241, Petitioner does not address Respondents' argument that § 1226(e) specifically precludes review where an IJ has *already* made a bond determination pursuant to the INA. *See id.* at 4–6. Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Accordingly, district courts lack jurisdiction to review discretionary bond decisions made by an IJ. *See Nielsen v. Preap*, 586 U.S. 392, 401 (2019). This jurisdiction-stripping only applies, however, "to 'discretionary' decisions about the 'application' of § 1226 to particular cases. It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)). This means that where a petitioner challenges a particular discretionary "action" taken by an IJ, rather than the statutory framework as a whole, § 1226(e) precludes review of that action by federal courts. *Jennings*, 583 U.S. at 296; *Demore*, 538 U.S. at 516–517. This court may therefore only consider Petitioner's Petition and Motion insofar as it challenges the extent of ICE's detention authority under the framework established by the INA. *See Nielsen*, 586 U.S. at 401.

Petitioner's Petition and Motion do not challenge the IJ's authority to deny bond. [R. 7, p. 5 (recognizing that the IJ's bond decision is "discretionary")]. Instead, Petitioner argues that the dual findings by the IJ—that he lacked jurisdiction to provide bond relief, and alternatively, that Petitioner was a danger to the community and a flight risk "[s]hould a reviewing body find that the Court has authority to hear [Petitioner's] bond," [R. 5-2, p. 1]—create a "jurisdictional void where neither the Immigration Courts nor the federal courts may test the legality of confinement." [R. 7, pp. 3, 5]. In other words, Petitioner appears to believe that he did not receive a bond hearing at all, and therefore that he has been denied any meaningful review of his detention. *See* [R. 7, pp. 5, ("[T]he government has effectively denied that any forum possesses meaningful authority to release [Petitioner].")], 6 ("Under [Respondents'] theory, ICE may detain a noncitizen indefinitely while simultaneously disclaiming parole authority, while the Immigration Court

disclaims jurisdiction to grant meaningful custody relief, and while the federal courts are said to be powerless to intervene.")].

Petitioner does not appear to understand that the IJ's bond determination provided precisely the process he is due under the Fifth Amendment. As the Court has already extensively discussed elsewhere, *see Martinez-Elvir*, 807 F.Supp.3d at 735, the INA provides two frameworks for detention depending on whether an alien is an "applicant for admission" or an "alien seeking admission" under 8 U.S.C. § 1225, or is instead an "alien" covered by the more general provision 8 U.S.C. § 1226. This distinction between § 1225 and § 1226 corresponds to the IJ's alternative grounds for his decision in Petitioner's case. Although the IJ did not explain as such, if Petitioner's detention was under § 1225, then the IJ determined *Matter of Hurtado* applies and forbids him from granting bond.[5] [R. 5-2, p. 1]; *see* 29 I&N Dec. 216, 227 (2025) ("[T]he mere issuance of an arrest warrant does not endow an Immigration Judge with authority to set bond for an alien who falls under Section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)."). But, if Petitioner's detention was under § 1226, the IJ understood that Petitioner was entitled to a bond hearing, and thus he appropriately issued findings as to Petitioner's danger to the community and flight risk. [R. 5-2, p. 1].[6] Although the IJ could have explained this reasoning more clearly, to summarize, the IJ ruled that if Petitioner was detained under § 1225, the IJ lacked jurisdiction to release him, and alternatively, if Petitioner was detained under § 1226, he was a flight risk and a danger to the community, and therefore release was not warranted. *See id.* In making this determination, the IJ

---

[5] In any event, Petitioner does not challenge any ruling under § 1225, *see generally* [R. 1; R. 3; R. 7], and even if he did, as the Court has explained, he already received the bond hearing to which he would be entitled under § 1226. *See supra*.

[6] Similarly, Petitioner does not argue this Court has jurisdiction to review the IJ's determination on the merits. *See generally* [R. 1; R. 3; R. 7].

afforded Petitioner all the process he was due under BIA precedent and the text of the INA. *See* [R. 5-2].

Petitioner attempts to reframe these well-established issues by characterizing his continued detention as "no longer serv[ing] any legitimate civil or regulatory purpose." [R. 1, p. 13]; *see also* [R. 7, pp. 2, 5, 6, 7, 8, 9, 11, 12]. But in support, Petitioner argues only that he is neither a danger to the community nor a flight risk, that his testimony is needed in state court, and that his detention is "prolonged." *See* [R. 1, pp. 10, 13; R. 7, p. 3]. The Court has already addressed Petitioner's first argument, *see supra*, and rejects his second argument below, *see infra* Section III(C). As for his third argument, Petitioner cites *Zadvydas v. Davis* and *Ly v. Hansen* in claiming that this Court may review lengthy detention periods that lack adequate constitutional justification. *See* [R. 7, p. 3 (citing 533 U.S. 678, 690–92 (2001); 351 F.3d 263, 269–72 (6th Cir. 2003))]. These cases are inapposite, as they address detention periods of indefinite confinement and two years' confinement, *Zadvydas*, 533 U.S. at 684–86, and one and one-half years' confinement, *Ly*, 351 F.3d at 271. By contrast, Petitioner's detention period has not yet even begun to trigger the six-month period within which detention is presumptively reasonable, since he has not been issued a final order of removal. *See Zadvydas*, 533 U.S. at 683, 701–02. Petitioner's third argument therefore fails.

In summary, Petitioner does not dispute that he requested and received a bond redetermination hearing. [R. 7, p. 2]. Petitioner nowhere alleges that the IJ wholly failed to consider the evidence he offered as to his continued residence, community ties, work history, and criminal record, nor does he claim the hearing was procedurally improper. *See generally* [R. 1; R. 3; R. 7]. Petitioner's reference to the "civil or regulatory purpose[s]" of detention is unavailing. *See* [R. 1, pp. 2, 13]. And, as discussed above and below, Petitioner's references to pending state criminal

proceedings and "prolonged" detention periods are unavailing. *See id.* at 10–11; [R. 7, pp. 5, 7]. Petitioner therefore fails to raise a cognizable challenge to the underlying statutory framework or the extent of ICE's detention authority. Lastly, as the Court has already briefly outlined, to the extent Petitioner takes issue with IJ Johnson's discretionary decision to deny bond, that challenge is barred by § 1226(e). *See Nielsen*, 586 U.S. at 401; *Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516. Taken together, Petitioner is not entitled to relief on this ground.

## B.  ICE's Refusal to Grant Discretionary Parole

Petitioner next challenges ICE's refusal to grant parole under 8 U.S.C. § 1182(d)(5)(A), describing the decision as "arbitrary, capricious, and unconstitutional." [R. 1, p. 14]. Petitioner points to 8 C.F.R. § 212.5(b), which provides for parole of "[a]liens whose continued detention is not in the public interest" as determined by various officials identified in § 212.5(a).[7] According to Petitioner, ICE has been informed of Petitioner's status as the sole witness to a violent crime, making Petitioner's detention "not in the public interest." [R. 1, pp. 14–15]; 8 C.F.R. § 212.5(b)(5). Rather than grant parole, ICE used "bureaucratic deflection" to direct defense counsel to the Immigration Court, which then "disclaimed parole authority and directed counsel back to ICE," ultimately producing a system "incompatible with due process" where "parole authority exists in theory but in practice is exercised by no one." [R. 1, pp. 14–15].

---

[7] Section 212.5(a) allows parole to be granted by the following individuals, "subject to the parole and detention authority of the Secretary or his designees":

> [T]he Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing . . . .

8 C.F.R. § 212.5(a).

As previously discussed, *see supra* Section III(A), the Immigration Court *did* exercise its bond authority through IJ Johnson's determination at Petitioner's bond hearing. *See* [R. 5-2, p. 1]. However, the IJ's determination addressed *his* authority to grant parole under § 1225 and § 1226, not the parole authority afforded to ICE under § 1182(d)(5)(A). The Court will therefore address whether ICE properly denied parole under § 1182(d)(5)(A).

Under Section 1182(d)(5)(A),

> [t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States. . . .

8 U.S.C. § 1182. The Supreme Court has recognized this statute confers an "exceedingly broad" and "discretionary" authority, *Jean v. Nelson*, 472 U.S. 846, 852, 855 (1985), and this Court has reasoned similarly, *see Perez v. Supervisory Detention and Deportation Officer*, No. 3:24-CV-735-RGJ-LLK, 2026 WL 516570, at *16 (W.D. Ky. Feb. 3, 2026) ("Immigration law clearly enables the Executive Branch to exercise its discretion to temporarily allow noncitizens into the United States who are applying for admission to the country instead of holding them in detention." (citing 8 U.S.C. § 1182(d)(5)(A)), *report and recommendation adopted by Perez v. Supervisory Detention and Deportation Officer*, No. 3:24-cv-735-RGJ-LLK, 2026 WL 512698 (W.D. Ky. Feb. 24, 2026), as have other district courts within the Sixth Circuit, *see, e.g., Rodriguez v. Raycraft*, No. 4:26-CV-0302, 2026 WL 656956, at *8 (N.D. Ohio Mar. 9, 2026) ("[D]iscretionary parole is permitted under section 1182(d)(5)(A)."); *Ikharo v. Shanks*, No. 1:19-CV-256, 2020 WL 3490376, at *4 (S.D. Ohio Feb. 21, 2020) (describing the "discretionary use of parole" and the "discretionary decision" under Section 1182(d)(5)(A)).

Petitioner cites to no sources that indicate ICE lacks this discretion under § 1182(d)(5)(A). Instead, Petitioner characterizes his continued detention despite such discretion as "arbitrary."

[R. 1, p. 15]. Although Petitioner may be attempting to invoke the Administrative Procedure Act to set aside ICE's action as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law under 5 U.S.C. § 706(2)(A), Petitioner provides no further explanation or argumentation along these lines. Because any such argument is wholly undeveloped, the Court need not consider it further. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–34 (1st Cir. 1995))) (internal quotation marks omitted).

Setting aside Petitioner's wholly insufficient possible invocation of the Administrative Procedure Act, Petitioner also characterizes ICE's decision to deny his release on parole as creating a "jurisdictional vacuum where no agency actor will accept responsibility for his confinement." [R. 7, p. 10]. But this description of his circumstances is supported by neither the objective facts nor by Petitioner's language elsewhere describing these facts. In claiming that ICE refuses to "accept responsibility for his confinement," *id.*, Petitioner appears to contend that the email he received from ICE agent Jason Johnson, in which Mr. Johnson stated he "cannot release anyone on parole," [R. 1-3, p. 3], reflected some sort of official ICE position disclaiming parole authority, as opposed to merely a denial of parole as to Petitioner specifically. *See* [R. 1, p. 6 (describing ICE as "disclaim[ing] authority to provide the release sought")]. Yet at other points, Petitioner appears to recognize that Agent Johnson *was* only speaking as to Petitioner's specific detention, as Petitioner elsewhere describes ICE as merely "refus[ing] to grant parole or release," *id.* at 9; *see also id.* at 14; [R. 7, p. 10], and as "oppos[ing] [Petitioner's] release," [R. 1, p. 10], and even

- 13 -

characterizes ICE's parole authority as "discretion[ary]," *id.* at 11. Petitioner's own statement of the facts reflects the reality that a single email from an ICE agent of unknown standing within the agency cannot possibly represent an official ICE position disclaiming ICE's broad and discretionary parole authority.

Moreover, even if Petitioner intends to challenge ICE's decision to deny parole in Petitioner's specific case, the sources cited in Respondents' Response make clear that the decision by immigration authorities to deny parole is not judicially reviewable. *See* [R. 5, pp. 3–4]. For example, when considering 8 U.S.C. § 1182(d)(5)(A)—providing that "[t]he Secretary of Homeland Security may . . . in his discretion parole into the United States . . . any alien applying for admission to the United States"—together with 8 U.S.C. § 1252(a)(2)(B)(ii)—providing that "no court shall have jurisdiction to review . . . any decision or action of the Attorney General or Secretary of Homeland Security" that is "specified . . . to be in the discretion of" that official—it is clear that this Court cannot review ICE's discretionary decision to decline parole. As Respondents note, numerous courts—including numerous circuit courts and some district courts within the Sixth Circuit—have reached the same conclusion. *See* [R. 5, p. 4 (citing decisions from the Second, Third, Seventh, Ninth, and Eleventh Circuits holding the same)]; *see also Ikharo v. Shanks*, No. 1:19-CV-256, 2020 WL 3490376, at *4 (S.D. Ohio Feb. 21, 2020), *report and recommendation adopted*, No. 1:19-CV-256, 2020 WL 3488925 (S.D. Ohio June 26, 2020) ("[T]he Court is without jurisdiction over challenge[s] to the discretionary use of parole pursuant to 8 U.S.C. § 1182(d)(5)(A)."); *Sillah v. Davis*, 252 F.Supp.2d 589, 597 (W.D. Tenn. 2003) ("[D]ecisions concerning the granting and revocation of immigration parole [under 8 U.S.C. § 1182(d)(5)(A)] are within the discretion of the Attorney General . . . and are not subject to judicial review." (citing 8 U.S.C. § 1252(a)(2)(B)(ii))). These sources of law, taken together with

Petitioner's failure to even cite to § 1182 or § 1252 in his Reply—much less address these arguments raised by Respondents—are fatal to Petitioner's claim. As a final note, the Court points out that Petitioner does not cite to any recent change in the applicable law or regulations such that the Court's understanding of Sections 1182 and 1252 may be outdated, nor does Petitioner's briefing suggest that he has filed a formal request for parole pursuant to ICE's § 1182 authority, as opposed to his mere email request sent to ICE's Chicago outreach email address. *See generally* [R. 1; R. 1-3; R. 3; R. 7].

Therefore, Petitioner's arguments under § 1182(d)(5)(A) are wholly unavailing and do not support his release by order of this Court.

## C. Kentucky's Sovereign Interest

Petitioner's next argument in support of his release invokes the sovereign interest of the Commonwealth of Kentucky. [R. 1, p. 15; R. 3, p. 3; R. 7, pp. 7–9]. Petitioner notes his status as the sole victim and witness to a violent armed carjacking and points to the Jefferson County Attorney's Office's request for Petitioner's "continued presence and availability to testify in the pending prosecution" as demonstrating the necessity of his immediate release. *See* [R. 1, p. 15; R. 3, p. 3; R. 7, pp. 7–9; R. 1-1, p. 3]. According to Petitioner, "[t]he federal government may not use its regulatory authority to disable a state's courts, obstruct prosecutions, or nullify the exercise of police power." [R. 1, p. 15]. Because Respondents have shown no "compelling necessity" for his continued detention, the Constitution supposedly demands his release. [R. 7, p. 8].

In countering, Respondents point to the preliminary issue of Petitioner's standing, arguing that he lacks standing to assert Kentucky's interest in his appearance as a witness. [R. 5, p. 5]. Then, addressing the merits, Respondents argue "states and their officials cannot compel or preclude actions taken by the federal government," and further note that his appearance in the

Kentucky state prosecution "is more likely if he is in ICE custody than if he is left at large," as shown by his failure to appear in his own court case and by the IJ's finding that he is a flight risk. *Id.*

Petitioner's Reply does not address Respondents' standing argument. *See generally* [R. 7]. Instead, the Reply reiterates Petitioner's previous arguments, claiming that Petitioner's release is necessary so that the state prosecution can proceed. *See id.*

As to Respondents' standing argument, the United States Supreme Court has made it clear that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Such is the case even where the individual claims to be a witness or victim of a crime. *See Harris v. Bradley*, No. 1:15-CV-1041, 2016 WL 286076, at *5 (W.D. Mich. Jan. 25, 2016). The Court therefore finds Petitioner lacks standing to argue he is entitled to release on this ground.

Moreover, even if Petitioner had standing to bring this claim—which he does not—the federal government need not accede to the Commonwealth's request. Other courts have found that even *federal* prosecutors "cannot preclude a deportation proceeding . . . because such action would constitute an impermissible exercise of authority over the INS," essentially permitting "the United States attorney's general power of prosecution [to] usurp the attorney general's specific power to deport certain classes of aliens." *San Pedro v. United States*, 79 F.3d 1065, 1070 (11th Cir. 1996). It would be even more extreme to permit *state* prosecutors to exercise authority over the INS by halting deportation, as Petitioner requests here, and there is no indication that the Attorney General has delegated such authority here. *See id.* at 1071. ("The need for express delegations in the area of immigration and naturalization is particularly acute. . . . As a result, the Attorney General must take special care to make delegations of authority in this area to officials outside INS with

- 16 -

particular clarity."). Taken together, between Petitioner's lack of standing and the lack of authority in state prosecutors to halt federal deportation proceedings, Petitioner's requested relief is not warranted on this ground.

### D.  U-Visa Program

Petitioner's final argument in support of his requested relief contends that his status as a certified crime victim under the U-Visa program supports his release, as his continued detention despite that status "defeats the purpose of the statute." [R. 1, p. 16]; *see* [R. 3, p. 4]. Respondents counter that Petitioner's Petition and Motion "offer[] no legal authority for the notion that his pursuit of a U visa somehow entitles him to nonapplication of all other immigration laws, including those related to custody of aliens in removal proceedings . . . ." [R. 5, p. 6]. Petitioner makes no reply in his subsequent filing. *See generally* [R. 7].

The Court agrees with Respondents. The governing regulation for U-visas, 8 C.F.R. § 214.14, provides that "[t]he filing of a petition for U-1 nonimmigrant status has no effect on ICE's authority to execute a final order [of removal]," but a petitioner who is subject to a final order may seek a stay of removal pending the completion of the U-visa process. 8 C.F.R. § 214.14(c)(1)(ii). The law is clear; Petitioner's pending application for a U-Visa does not prevent his removal, but Petitioner may nevertheless seek a stay of removal as outlined by the regulation.

### IV.    CONCLUSION

The Court has reviewed Petitioner's Petition for Writ of Habeas Corpus, [R. 1], and Emergency Motion for Temporary Restraining Order and Immediate Release from Custody, [R. 3], Respondents' Response, [R. 5], Petitioner's Reply, [R. 7], and Petitioner's Motion to Expedite Decision on Petition for Writ of Habeas Corpus, [R. 13]. Based on the evidence and

arguments therein as well as the above discussion thereof, Petitioner is not entitled to relief under either filing.

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Petitioner's Petition for Writ of Habeas Corpus, [R. 1], is **DENIED.**

2. Petitioner's Emergency Motion for Temporary Restraining Order and Immediate Release from Custody, [R. 3], is **DENIED**.

3. Petitioner's Motion to Expedite Decision on Petition for Writ of Habeas Corpus, [**R. 13**], is **DENIED AS MOOT**.

4. This matter is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

5. A separate Judgment shall enter contemporaneously herewith.

This the 6th day of April, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY